**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **DRAGONFLY AVIATION, LLC** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:19-cv-00073** |
| | § | |
| **PACIFIC HELICOPTER TOURS, INC.** | § | |

**PLAINTIFF, DRAGONFLY AVIATION, LLC'S, SECOND AMENDED COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Now comes Plaintiff, **DRAGONFLY AVIATION, LLC** (hereinafter "Dragonfly"), and files this Second Amended Complaint (the "Complaint") complaining of Defendant, **PACIFIC HELIPOTER TOURS, INC.** (hereinafter "Pacific"), and would respectfully show the Court as follows:

## I. PARTIES

**1.1**    Dragonfly is a domestic limited liability company with its principal place of business in Laredo, Texas.

**1.2**    Pacific is a Hawaii corporation with its principal place of business in Kahului, Hawaii.

**1.3**    Service of Dragonfly's Second Amended Complaint is being made as indicated herein as Pacific has already appeared in this action.

## II. JURISDICTION AND VENUE

**2.1**    This Court has subject matter jurisdiction over the parties and claims asserted herein under 28 U.S.C. § 1332 and 28 U.S.C. § 1441 because diversity of citizenship exists between Dragonfly and Pacific, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

**2.2**    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to this action occurred in the Southern District of Texas.

### III. FACTS

**3.1**    Dragonfly is a Texas limited liability company that operates a Federal Aviation Regulations ("FAR") Part 141 certified flight school in Laredo, Texas. In addition to its Part 141 operations, Dragonfly is a FAR Part 135 operator and conducts helicopter chargers for purposes of gas pipeline surveying, cattle herding, and wildlife tracking.

**3.2**    Pacific is a Hawaii corporation that conducts helicopter charter operations on the island of Maui.

**3.3**    In June of 2017, Dragonfly (as Lessor) and Pacific (as Lessee) entered into a 24-month Aircraft Lease Agreement (the "Lease") for a McDonnel-Douglas model MD500D (serial number 580315D, tail number N36KR) (the "Helicopter"). A true and correct copy of the Lease is attached hereto as Exhibit "1" and is incorporated for all purposes as if set forth verbatim. In paragraph 5.1, Pacific agreed that the Helicopter was accepted "as is, where is with all faults."

**3.4**    Pursuant to the Lease, a representative of Pacific signed an Affidavit of Delivery and Acceptance which stated:

> LESSOR acknowledges that LESSEE is an expert in helicopter aviation and Maintenance and is proficient in aircraft inspection and evaluation. LESSOR is relying on this expertise. Upon acceptance and delivery of the aircraft, the LESSEE has acknowledged the aircraft is adequate for its intended use and assumes full responsibility of said aircraft for the terms of this lease.

**3.5**    The Lease set forth the conditions, agreements and responsibilities of both Dragonfly and Pacific, and this action concerns Pacific's breach of various Lease provisions. Almost

immediately, Pacific failed to comply with its obligations under the Lease. Examples of such failures include, but are not limited to, the following:

a.    Failed to make timely Lease payments (which ultimately resulted in the Lease's early termination);

b.    Performed unauthorized repairs and/or modifications to the Helicopter;

c.    Failed to properly maintain and repair the Helicopter;

d.    Failed to repair and/or replace equipment or components damaged by Pacific's negligence and/or use;

e.    Repaired the Helicopter with substandard equipment;

f.    Failed to keep adequate records and logs;

g.    Failed to timely advise Dragonfly of many of the alterations made to the Helicopter by Pacific;

h.    Failed to provide reports (*i.e.*, daily flight logs, work orders, and/or any other written documents) which related to the repair and/or maintenance of the Helicopter;

i.    Failed to provide Dragonfly with notice of damage resulting from Pacific's negligence and/or use;

j.    Failed to repair the damaged Helicopter "so as to restore it to a condition equivalent to "approved airworthy condition;"

k.    Failed to properly return the Helicopter in the same condition as which it was received; and

l.    Failed to provide an annual inspection of the aircraft prior to its return to the Plaintiff.

**3.6**    Not only was Pacific consistently late on the agreed and contractual monthly Lease payments Dragonfly would later learn that Pacific added, replaced and/or allegedly repaired parts on the helicopter causing further damage to the Helicopter.  In fact, prior to the end of the Lease term, Pacific completely abandoned its contractual obligations thereby causing financial damage to Dragonfly.

**3.7**    The trouble, however, did not end when the Lease was terminated because, as Dragonfly would soon learn, the Helicopter was no longer airworthy. After the Helicopter was returned by Pacific, Dragonfly discovered that numerous components were either missing or damaged by Pacific. Examples include, but are not necessarily limited to, the following: Breeze-Eastern hook, on-board systems hook, right and left seat belt fittings, seat belt U-links, seats and seat covers, fresh air cable, link rod ends, scissor links, door plunger kits, droop roller, magnetic pick-up, friction knob and blade tie-downs. In other instances, Dragonfly was forced to repair corrosion damage to the rotor blades, swashplate, tail fin and compressor and also to re-paint and re-stripe the Helicopter to repair numerous dings and chips to the body.

**3.8**    In addition, Dragonfly replaced a tracking device and the Helicopter's exhaust stacks. The tracking device had been removed by Pacific and replaced with a tracker that was never registered to the Helicopter, thus, requiring Dragonfly to re-install and rewire a proper tracking device. The exhaust stacks required replacement because those returned by Pacific were cracked on both sides and appeared to have been welded.

**3.9**    Post-return inspections would also reveal more serious issues. For example, Dragonfly learned that Pacific not only "hot started" the Helicopter's engine but also over-temped the turbine, both of which caused severe damage and required complete disassembly and overhaul. As far as the turbine was concerned, Dragonfly was required to rent a replacement for approximately two months while the original turbine was restored to working condition. Dragonfly was also advised that the starter generator was overflown by approximately 500 hours.

**3.10**    Upon information and belief, Dragonfly has estimated that the damages caused by Pacific exceed $700,000, including Dragonfly's inability to lease the Helicopter for approximately six months while repairs were made.

## VI.  CAUSES OF ACTION

### 4.1    Breach of Contract

a.      Dragonfly incorporates by reference the factual allegations contained in paragraphs 3.1 through 3.10.

b.      Beginning in June of 2017, Dragonfly and Pacific had a valid, enforceable agreement which was formed through a course of dealing and negotiations between the parties. [*See* Exhibit "A" which is attached hereto and incorporated by reference for all purposes as if set forth verbatim].

c.      Although Dragonfly performed its obligations under the Lease, the acts, conduct and omissions of Pacific as set forth above constitute a breach of contract under Texas law. As such, said breach has directly and proximately caused Dragonfly to sustain actual damages in an amount in excess of the minimum jurisdictional requirements of this Court and for which damages Dragonfly now sues.

d.      Dragonfly has sustained damage in excess of this Court's minimum jurisdictional amount as a direct and proximate result of the acts, omissions and/or conduct of Pacific and hereby seeks recovery of all such damages.

### 4.2    Negligent Misrepresntation

a.      Dragonfly incorporates by reference the factual allegations contained in paragraphs 3.1 through 3.10.

b.      Pleading further and in the alternative, if same be necessary, Pacific made representations to Dragonfly in the course of Pacific's business or in a transaction in which Pacific had a pecuniary interest.

c.      Pacific made false representations for the guidance of Dragonfly.

d.      Pacific did not use reasonable care in obtaining or communicating the information to Dragonfly on which Dragonfly reasonably relied.

e.      Dragonfly has sustained damage in excess of this Court's minimum jurisdictional amount as a direct and proximate result of the acts, omissions and/or conduct of Pacific and hereby seeks recovery of all such damages.

f.      Further, Pacific acted willfully and maliciously in causing the damages sought; thus, Dragonfly is also entitled to recover punitive damages.

**4.3    Fraud**

a.      Dragonfly incorporates by reference the factual allegations contained in paragraphs 3.1 through 3.10.

b.      Pacific made material misrepresentations to Dragonfly both at the time of the Lease and subsequently. Specifically, but not by way of limitation, Pacific misrepresented its maintenance and/or inspection capabilities and, later, any damage caused by Pacific's negligence and/or use.

c.      Pacific made such misrepresentations with knowledge of their falsity and with the intention that such Dragonfly rely on same.

d.      Dragonfly has sustained damage in excess of this Court's minimum jurisdictional amount as a direct and proximate result of the acts, omissions and/or conduct of Pacific and hereby seeks recovery of all such damages.

e.      Further, Pacific acted willfully and maliciously in causing the damages sought; thus, Dragonfly is also entitled to recover punitive damages.

### 4.4    Promissory Estoppel

a.      Dragonfly incorporates by reference the factual allegations contained in paragraphs 3.1 through 3.10.

b.      Pleading further and in the alternative, if same be necessary, Pacific is further liable under the doctrine of equitable, or alternative, promissory estoppel.

c.      Pacific made false representations and/or concealed material facts and knew or reasonably should have known that Dragonfly would rely on the same.

d.      Dragonfly relied upon such representations, and such reliance was both reasonable and justified and resulted in material detriment to Dragonfly.

e.      Dragonfly has sustained damage in excess of this Court's minimum jurisdictional amount as a direct and proximate result of the acts, omissions and/or conduct of Pacific and hereby seeks recovery of all such damages.

## V. ATTORNEY FEES, EXPENSES, COSTS AND INTEREST

**5.1**      Dragonfly has been required to hire the undersigned attorneys to prosecute this action. In retaining counsel, Dragonfly has agreed to compensate its attorneys with a reasonable, necessary, usual and customary fee.

**5.2**      Dragonfly is entitled to recover attorneys' fees pursuant to a written contract and, specifically, the Aircraft Lease Agreement which is made the subject of this action, and applicable common and statutory law.

**5.3**      Dragonfly, therefore, seeks the recovery of its reasonable and necessary attorneys' fees to prosecute this action through the trial and/or any subsequent appeal.

## VI. CONDITIONS PRECEDENT AND JURY DEMAND

**6.1**      All conditions precedent have been performed or have occurred.

**6.2**      Dragonfly hereby demands a trial by jury and has tendered payment of the required jury fee.

## VII.  PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, **DRAGONFLY AVIATION, LLC,** prays for judgment against Defendant, **PACIFIC HELIPOTER TOURS, INC.** for:

**7.1**      Actual, compensatory and/or general damages over $75,000;

**7.2**      Economic losses and property damages over $75,000;

**7.3**      Exemplary damages as provided by law;

**7.4**      Reasonable and necessary attorneys' fees;

**7.5**      Prejudgment and postjudgment interest as allowed by law;

**7.6**      Costs of suit; and

**7.7**      Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

By:

  /s/ *Roger D. Kirstein*
ROGER D. KIRSTEIN, Attorney-In-Charge
State Bar No. 11533700
Southern District ID No.:  16478
Email: rkirstein@langleybanack.com

OF COUNSEL:

GAYLA CORLEY
State Bar No. 00790505
Southern District ID No.: 20181
Email: gcorley@langleybanack.com

LANGLEY & BANACK, INC.
745 East Mulberry Avenue, Suite 700
San Antonio, Texas  78212
Telephone:    (210) 736-6600
Facsimile:    (210) 735-6889

Julio A. Garcia, Jr.
THE GARCIA LAW FIRM
5829 Northgate Lane
Laredo, Texas  78041
Telephone:    (956) 724-1125
Facsimile:    (956) 568-4870
Email: thegarciafirm@yahoo.com

ATTORNEYS FOR PLAINTIFF,
DRAGONFLY AVIATION, LLC

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was electronically filed with the Clerk of the United States District Court for the Southern District of Texas, Laredo Division, and that a true and correct copy of the foregoing instrument will be served upon all counsel of record pursuant to ECF as to Filing Users on this the 15th day of January, 2020:

Mr. Rupert F. Barron
HIRSCH & WESTHEIMER
1415 Louisiana, 36th Floor
Houston, Texas 77002

/s/ *Roger D. Kirstein*

ROGER D. KIRSTEIN

# AIRCRAFT LEASE AGREEMENT
# MD500D Serial Number: 580315D

**THIS AGREEMENT** is entered into between **Dragonfly Aviation, LLC**, a **Texas** corporation, hereinafter referred to as "LESSOR", and **Pacific Helicopter Tours, Inc.**, a **Hawaii** corporation, hereinafter referred to as "LESSEE".

## RECITALS

**WHEREAS, LESSOR** is the registered owner of a certain aircraft; which aircraft together with all equipment, accessories, appurtenances, avionics, and attachments associated therewith, is specifically described in Schedule "A " (Helicopter **McDonnell-Douglas**, model **MD500D**, with manufacturers serial number **"580315D"**, actually registered before the Federal Aviation Administration with tail number **N36KR**), which is attached hereto and incorporated herein, and which shall hereinafter be referred to as "the Aircraft"; and

**WHEREAS, LESSEE** desires to lease the Aircraft from LESSOR under such terms and conditions as are mutually satisfactory to both parties;

**NOW, THEREFORE**, in consideration of the premises herein set forth, Lessor and Lessee covenant and agree as follows:

## 1. LEASE OF AIRCRAFT AND CONDITIONS

1.1 In consideration of the rental payments to be charged, as set forth in Section 3.0 herein, and in further consideration of all the mutual agreements and covenants set forth hereunder, LESSOR hereby agrees to lease the Aircraft to LESSEE and LESSEE agrees to rent, lease and hire the Aircraft.

1.2 The parties hereto intend this Lease to be a true Lease and that LESSEE acquires only a leasehold interest hereunder and that it does not acquire any right of beneficial ownership or equity in the Aircraft by payment of rental hereunder. Title to the Aircraft should remain with the Lessor.

1.3 This Lease of the Aircraft includes the engines on the Aircraft, the parts described on Schedule "A" and all other avionics, appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment of whatever nature which may from time to time be part of, considered part of, attached to, incorporated in, or installed on the Aircraft whether or not described on Schedule "A" and all such components which shall have been removed or detached from the Aircraft until a substitute or replacement component shall have been provided pursuant to this Lease. Provided, however, that Lessee shall be permitted to attach and to subsequently detach, in compliance with applicable FAA regulations, the following items, which shall not become a part of the Aircraft and shall remain owned by Lessee:

1.3.1   Aerial Saw

## 2. TERM OF LEASE

2.1 TERM OF LEASE. The term of the lease of the Aircraft shall be **Twenty-Four (24)** consecutive months, and shall be renewable at Lessee's option for additional periods on one (1) month each, up to a total of six (6) additional months.

2.2 COMMENCEMENT DATE. The term of the lease for the Aircraft, described above shall commence upon LESSEE acceptance of the Aircraft and shall terminate either

EXHIBIT "1"

## AIRCRAFT LEASE AGREEMENT
### MD500D Serial Number: 580315D

at the end of the above referred term or on the date in which the LESEE returns the Aircraft as stated herein.

### 3.0 PAYMENTS UNDER THE LEASE

3.1 LESSEE shall timely make all payments for the use and operation of the Aircraft in accordance with the following terms and conditions:

3.2 RENT. The rent payable by LESSEE to LESSOR shall be **$6,800.00 USD** per month. The rent shall be due and payable in advance on the 1st day of each successive month during the term of this lease.

    (a) COMPONENT RESERVE CHARGE. In addition to the base monthly rental above, LESSEE shall pay the LESSOR an additional sum of **$300.00 USD** per flight hour as a "Component Reserve Charge" specifically described hereunder in Schedule "C", and for use hereunder as described in Section 7 for the first 12-months, and **$325.00 USD** per flight hour for the remainder of the lease term. The Component Reserve Charge shall be due and payable on the 1st day of each successive month during the term of this lease for the hours flown in the previous calendar month in which the flying of the Aircraft occurred.

3.3 Unless elsewhere expressly stated to the contrary, all rental and other payments shall be due and payable on the first day of each successive month throughout the term of the lease.

3.4 Unless the LESSOR provides other payment instructions, all rental and other payments shall be transferred by wire according to the following instructions:

| | |
|---|---|
| Account Name: | Dragonfly Aviation, LLC |
| Bank: | RCB Bank |
| Location: | 300 W. Patti Paige, Claremore, Oklahoma 74017 |
| Routing Number (ABA): | 103112594 |

Account Number: 4804

LESSOR may from time to time amend transfer instructions or method of payment including payment address.

3.5 LESSEE shall pay **$14,000.00 USD in advance** as a security deposit, which will be refunded upon return of the Aircraft in a suitable condition.

### 4. NET LEASE TO LESSOR

4.1 Except as otherwise set forth herein, all rental and payment obligations of LESSEE shall be net to LESSOR. LESSEE shall be responsible for the payment of ALL expenses relating to the care, maintenance, use, and operation of the Aircraft during the term of this lease, in the same manner as if LESSEE were the owner of the Aircraft, which responsibility shall include the performance of all obligations relating to the Aircraft, except as otherwise specified herein.

4.2 The LESSEE agrees to pay and indemnify the LESSOR for, and hold the LESSOR harmless from and against, on an after tax basis, all license and registration fees, income, franchise, gross receipts, business, sales, property, transfer, use, excise, personal property, ad valorem, value added, leasing, leasing use, stamp, landing, airport use or other taxes, levies, imposts, imports, duties, charges, or withholding of

# AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

any nature, together with any penalties, fines, or interest thereon (collectively referred to as "Impositions"), arising out of this Lease or arising upon the leasing, selling possession, use, operation, repair, maintenance, overhaul settlement of any insurance claim, or return thereof, or upon the payment of any rent to the LESSOR or with respect to any lease transactions or any use, operation or possession of the Aircraft contemplated by this Lease and imposed against the LESSOR, the LESSEE or the Aircraft or any part thereof during the term by any government or other taxing authority, however, the LESSEE shall have no obligation to pay the LESSOR for taxes, fees or other charges imposed on LESSOR, and levied on or measured only by the net income or by the capital of the LESSOR (except in all such cases for any such tax imposed as a result of a payment of an indemnity

pursuant to this Lease). The LESSEE shall, to the extent permitted by law, cause all impositions to be billed to LESSEE.  The LESSEE shall, at its expense, timely file all forms and returns and timely to do all things required to be done in connection with the levy, assessment and payment of any impositions. The LESSEE shall submit, upon request of the LESSOR, written evidence to the LESSOR of the payment of all Impositions required to be paid hereunder.

4.3 LEESE'S obligations arising under the provisions of Section 4.2 hereof shall survive the expiration or early termination of this Lease, and the return of the Aircraft to the LESSOR.

## 5. ACCEPTANCE OF AIRCRAFT

5.1 Upon the execution by LESSEE, its employee or agent, of the Affidavit of Delivery and Acceptance, which is attached hereto as Schedule "B" and is hereby incorporated into and made a part of this Aircraft Lease Agreement, LESSEE thereby confirms the following: (1) That the Aircraft is in good working order and condition, (2) That the Aircraft is of the size, design, capacity, configuration, and manufacture agreed upon and selected by LESSEE, and (3) That LESSEE irrevocably accepts the Aircraft located in the **State of Texas** and that the Aircraft is accepted "as is, where is, with all faults" for all the above, and for all purposes. The Lessor warrants that the Aircraft is presently airworthy pursuant to the regulations of the USFAA, and the Aircraft is equipped with all the equipment and accessories as set out in Schedule "A" attached to this lease.

## 6. USE OF AIRCRAFT, PROHIBITED USE, AND GEOGRAPHICAL LIMITS 

6.1 USE OF AIRCRAFT. The responsibility for the use, custody, care, control, and operation of the Aircraft is clearly vested in LESSEE during the term of the lease, subject to any and all limitations and restrictions set forth hereunder and in the insurance policies obtained by LESSEE as required herein. LESSEE shall at all times use and operate the aircraft in accordance with the United States Federal Aviation Administration ("USFAA") regulations, and, otherwise, shall comply with all laws and regulations issued by any authority having sovereignty of the area in which the aircraft is operated. LESSEE shall be solely responsible for any fines, penalties, or forfeitures occasioned by a violation of any such laws or regulations. LESSEE shall exercise due care in the use and operation of the Aircraft, and shall NOT use the Aircraft for any unlawful purpose, or for any purpose for which LESSEE is not properly and adequately insured.

6.2 If at any time during the term of the lease, LESSOR supplies LESSEE with labels, plates, or other markings to be affixed to the aircraft then LESSEE shall affix and keep the same upon a prominent place on the Aircraft, or such specific place as may

# AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

be designated by LESSOR. LESSEE will be responsible to remove any and all labels, plates, placards or other markings upon termination of lease and return aircraft to its previous condition. No painting of the aircraft is permitted.

6.3 The Aircraft shall be flown only by licensed and qualified pilots and shall be maintained only by licensed and qualified mechanics. In the event that the insurance on the Aircraft is invalidated, whether such invalidation is express or implied, because of LESSEE being unable to obtain licensed and qualified pilots and/or mechanics, LESSEE shall NOT operate the Aircraft until such time as licensed and qualified pilots and/or mechanics are obtained and insurance on the Aircraft is made valid. LESSEE must notify LESSOR if qualified pilot(s) or mechanic(s) are not available to fly or maintain the Aircraft. The Aircraft shall be operated in accordance with the procedures and within the limitations, as each is set forth in the manufacturer's FAA approved flight manual for this specific make and model. LESSEE shall provide sufficient documentation outlining pilot(s) and mechanic(s) qualifications and training. LESSOR reserves the right to deny unqualified pilot(s) and mechanic(s). If LESSEE does not have qualified mechanic(s) available, LESSEE must use an FAA Certified Part 145 Repair Station for all maintenance to the Aircraft. LESSEE reserves the right to deny or appoint its own mechanic and/or repair station.

6.4 PROHIBITED USE. LESSEE shall NOT use the aircraft in any manner for the purpose of dispensing herbicides, pesticides, or other types of agricultural chemicals of whatever kind or nature without the prior; express written consent and approval of LESSOR.

6.5 Aircraft is equipped with an **Sky Connect** flight tracking system, LESSEE is responsible for registering and initiating flight tracking service. LESSOR will facilitate with this.

6.6 GEOGRAPHICAL LIMITS. LESSEE shall comply with any and all limitations that related to and define the geographical area in which LESSEE may operate the aircraft, which limitations, if imposed, may be set forth in the insurance policies obtained by LESSEE, as well as in the terms of this lease agreement. Should there be any conflict or variance as between the geographical limitations set forth in any such insurance policy and those set forth in this lease agreement, the LESSEE understands and hereby expressly agrees that the more restrictive of the two geographical areas shall apply to the operations and use of the Aircraft by LESSEE.

**LESSEE SHALL CONFINE ITS OPERATIONS TO THE FOLLOWING GEOGRAPHICAL AREA:**

*Contiguous United States of America* + HAWAii

## 7. MAINTENANCE AND REPAIR

7.1 The LESSOR shall

    7.1.1   Provide a fulling serviceable Aircraft at the initial acceptance of the Aircraft by LESSEE.

    7.1.2   Replace any time-life or overhaul components of the Aircraft which expire during the term of this lease. LESSEE will provide the labor for such replacements and will pay costs and expenses associated with shipping, delivery, fitting and installation.

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

7.1.3    Be responsible components with a mandated time-life limit, as listed in Schedule B whose value is ONE THOUSAND DOLLARS USD ($1,000.00) each or greater; provided that such costs are not the result of negligence of the LESSEE.

7.1.4    Be responsible for all parts and labor, shipping and delivery costs required to incorporate any Airworthiness Directive, mandatory Service Bulletin or LESSOR choice modification, issued while the Aircraft in on Lease if the cost exceeds $1,000.00.

7.1.5    Provide LESSEE with all items for which LESSOR is responsible to supply, ordered by LESSEE on 'A.O.G.' basis, within 72-hours of such notice being given to the LESSOR. In the event items or ordered are not received by the LESSEE in the stated time-period, the LESSEE shall have the option of supplying the item from the LESSEE's inventory and deducting the charge from the rental payment.

7.2 The LESSEE shall:

7.2.1    After initial acceptable be responsible for all damage, loss, repair, or replacement caused by use or negligence of the LESSEE or its employees or agents.

7.2.2    Repair, at the expense of the LESSEE, the damages caused by the fault or negligence of the LESSEE, however, if the time life of the component to be repaired changes due to repair, the cost of such repair or overhaul will be pro-rated and subject to LESSOR Lease obligations. Any betterment on components time or overhaul life will be at the expense (subject to prior approval) of the LESSOR. In case of dispute, a mutually agreeable third-party arbitrator will determine applicable fault or negligence or shared fault or negligence.

7.2.3    All costs of acquisition, repair, shipping, delivery, fitting and other expenses associated with the premature failure of time-life or overhaul components of the Aircraft will be billed to the LESSEE's account, subject to LESSOR's Lease obligations and the determination of fault, negligence or shared fault or negligence. Credit due for hours flown on components at the time of the premature failure will be credited towards the cost of the replacement component only. Fifty percent of the time remaining unused at the time of the premature failure shall be for the account of both parties accordingly. The LESSOR shall not be responsible for any labor, shipping, delivery, fitting and installation costs of component replacement. All invoices for components must be submitted to the LESSOR with supporting documentation no later than 120-days after completion of such repairs.

7.3 INSPECTION. The LESSEE shall permit the LESSOR or its duly authorized agent or representative to inspect the Aircraft at any reasonable time, and to furnish any information in respect to the Aircraft and its use that the LESSOR may request. Any such Person will give LESSEE reasonable notice of inspection and will ensure that it does not result in a disruption to the regular operation of the Aircraft. The cost of conducting an inspection shall be borne by LESSOR.

7.4 CARE OF THE AIRCRAFT. The LESSEE undertakes and agrees that the Aircraft will at all times be serviced, maintained and repaired (except as set out in

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

Paragraphs 7.1 and 7.2) at the expense of the LESSEE in such a manner that the operation of the said Aircraft will not result in any depreciation of same other than ordinary wear and tear. LESSE shall not be required to store the Aircraft in a hangar. The LESSEE shall maintain and keep the Aircraft and all components thereof in good order and repair as directed by the manufacturer of the Aircraft in accordance with the requirements of the USFAA, or any other applicable regulations, or of any governmental authority having jurisdiction, except for major overhaul as specified in Paragraphs 7.1 and 7.2.  It is understood that the LESSEE shall have the same protection as the LESSOR under the standard warranty clause of the manufacturer of the Aircraft, the terms and provisions of said warranty being incorporated herein. The damage caused by fault or negligence of the LESSEE shall be repaired at the expense of the LESSEE.

7.5 RECORDS AND LOGS. All records of repair, flight, engine, and other logs relative to the use of the Aircraft shall be kept in English and maintained by LESSEE in a form and manner equivalent to the requirements of the USFAA. Such records shall be made available for examination by LESSOR, shall be treated as belonging to the Aircraft and, shall be delivered to the LESSOR at the end of the lease term, including any extensions thereof.

7.6 PARTS PROVIDED BY LESSOR. LESSOR shall be responsible ONLY for the repair and/or replacement of the Aircraft's parts and components that have reached TBO or TLL. Lessee is responsible for any and all other parts or components of the aircraft, including all labor for removal and/or installation.

(a) Any parts or components provided to LESSEE by LESSOR or its agents during the term of this lease shall be subject to an acceptance period of ten (10) days from and after the receipt of any such parts or components. Should there be any deficiencies, discrepancies, or errors in the shipment of any such parts or components, LESSEE shall notify LESSOR in writing within ten (10) days from and after the receipt of same, otherwise any such parts or components shall be deemed to have been accepted and to be without any deficiencies, discrepancies, or errors in shipment.

## 8. ALTERATIONS TO AIRCRAFT

8.1 LESSEE shall not alter or make improvements to any aspect of the Aircraft, or install or remove any equipment or accessories, or change the configuration thereof, without the prior written approval of LESSOR - except such dynamic parts and components relating to the maintenance and repair of the Aircraft pursuant to Section 7.0 herein. Any such alterations, improvements, or changes so approved by LESSOR shall thereafter become the absolute property of LESSOR, except as specified in Section 1.3 above.

## 9. ACCESS TO AIRCRAFT

9.1 LESSOR, its representatives, pilots or agents, shall have access to the Aircraft at all reasonable times for the purpose of inspecting, examining, or exhibiting the same, or to make any repairs or alterations on the Aircraft deemed proper or necessary for the maintenance or preservation of same - provided that this

paragraph shall not be deemed a modification of the repair and maintenance responsibilities of LESSEE as otherwise set forth hereunder. LESSEE shall furnish any information in respect to the Aircraft and its use that LESSOR may reasonably request.

# AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

**10. REQUIRED REPORTS**

10.1 On or before the third (3rd) day of each successive month during the term of this lease, LESSEE shall furnish to LESSOR the following reports by email or fax:

 (a) A copy of the Daily Flight Log of the last day of the month; and

 (b) A copy of all applicable logs, work orders, and such other written documents as are prepared by or furnished to LESSEE and that relate in any way to the repair and/or maintenance of the Aircraft during the preceding month; and

 (c) A monthly Maintenance Status Run report are required to be emailed or faxed to the LESSOR's office.

**11. DAMAGE BY ACCIDENT**

11.1 In the event that the Aircraft is damaged by any accident or incident, LESSEE shall give full and immediate notice to LESSOR of such accident or incident, including all information known as to any possible injuries to persons or property, and shall thereafter fully cooperate with LESSOR in any investigation or recovery action. LESSEE shall fully comply with all reasonable requirements of LESSOR to protect LESSOR's rights and property; and LESSEE shall furnish all information required by any policy of insurance issued in connection with the Aircraft, as well as other information that may be known to LESSEE.

11.2 No loss of or damage to the Aircraft shall in any way impair or otherwise affect the obligations and responsibilities of LESSEE under the terms and conditions of this lease. All such obligations and responsibilities of the LESSEE, whether financial or otherwise, shall be and shall remain in full force and effect - regardless of any such loss of or damage to the aircraft.

**12. INSURANCE REQUIREMENTS**

12.1 The insurance provided by LESSEE is both Primary and Non Contributory to anything available to LESSOR and LESSOR's Lender. At all times during the term of this lease, including any extensions thereof, which shall include any retention or "holding over" of the Aircraft, as described hereunder in Section 20.0, LESSEE shall at its sole cost and expense, carry and maintain in full force and effect the insurance coverage's as set forth hereinafter. **All such insurance shall be obtained from insurers satisfactory to LESSOR, and shall be in a form acceptable to LESSOR and LESSOR'S Lender and its Insurance Broker**. Prior to the acceptance of the Aircraft by the LESSEE and, after delivery, annually, or at any earlier time upon LESSOR's written request, LESSEE shall provide LESSOR with *Certificates of Insurance* from any such insurance company, which *Certificates of Insurance* shall confirm:

 (a) That the type and the amount of the insurance coverage is in accordance with the requirements of paragraphs 12.2(a) and 12.2(b), as set forth hereunder;

 (b) That the insurer has agreed to give LESSOR and LESSOR's Lender thirty (30) days written notice prior to the policy in question being materially altered or canceled;

## AIRCRAFT LEASE AGREEMENT
### MD500D Serial Number: 580315D

(c) That should the insurer cancel such insurance for any reason whatsoever, or the same is allowed to lapse for nonpayment of premium, such cancellation or lapse shall not be effective as to LESSOR and LESSOR's Lender for a period of thirty (30) days from and after the date upon which LESSOR receives written notice from the insurer informing it of such cancellation or lapse;

(d) That, as against LESSOR and LESSOR's Lender and all other "additional insured" parties, as specifically set forth next below in paragraph 12.1 (e), the insurer has agreed to waive any rights of subrogation, set off, counterclaim, or any other deduction, whether by attachment or otherwise;

(e) That wherever LESSOR is stated to be an "additional insured" on any policy, the term LESSOR shall expressly include, **Dragonfly Aviation, LLC.** and LESSOR's Lender;

(f) That the coverage afforded to LESSOR and LESSOR's Lender as an "additional insured" on any liability insurance policy issued by the insurer shall be deemed to expressly include all costs and expenses that may arise or be incurred in the defense of LESSOR's interests hereunder in the event that LESSOR is named or joined in any law suit or legal action, which express inclusion shall be evidenced by a specific endorsement so stating;

(g) That the insurer has accepted contractual coverage as set forth in this Aircraft Lease Agreement as it relates to any relevant insurance and/or indemnification provision contained hereunder, which acceptance shall be evidenced by a specific endorsement so stating; and

(h) That the insurer agrees to comply with the direct payment to LESSOR and LESSOR's Lender, as sole "loss payees", of all hull insurance proceeds, if any, as such direct payment to LESSOR is expressly stipulated and agreed to herein by LESSEE in paragraph 12.3(c).

12.2 The type of insurance and the insurance coverage's required by the terms and conditions of this lease are as follows:

(a) LIABILITY INSURANCE. Prior to the delivery of the Aircraft and at LESSEE's sole cost and expense, LESSEE shall have obtained and shall have in full force and effect a combined single-limit aircraft liability insurance policy, including war risks and allied perils, covering bodily injury, and property damage in the minimum amount of **Two Million and 00/100 U.S. Dollars ($2,000,000.00 USD)**, which policy shall name LESSOR and LESSOR's Lender as an additional insured. Such liability policy shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured. Passenger liability may be included, or sub-limited as desired by LESSEE.

(b) HULL INSURANCE. Prior to the initial delivery of the Aircraft and at LESSEE's sole cost and expense, LESSEE shall have obtained and shall maintain in full force and effect an all risk **Aircraft Hull Insurance Policy**, including **Perils of War and Allied Perils** (i.e. terrorist acts, sabotage, confiscation, seizure, expropriation, nationalization, deprivation hi-jacking, etc.), covering the full insurable value of the Aircraft, which agreed value shall in no case be less than **$550,000.00 USD**, and which policy shall include extended coverage for war and allied perils and spare parts or any engines or parts while removed from the Aircraft. The deductible amount, if any, upon such policy covering the Aircraft upon any applicable loss of or damage to the Aircraft, shall be paid by

## AIRCRAFT LEASE AGREEMENT
### MD500D Serial Number: 580315D

LESSEE. The deductible amount, if any, upon such policy covering the spare parts and any engines or parts while removed from the Aircraft paid by LESSEE. This Aircraft Hull Insurance Policy shall name LESSOR and LESSOR's Lender as "loss payee" with such other "loss payees" as LESSOR or may subsequently designate and shall include in its terms *100% Breach of Warranty Coverage* in favor of LESSOR and LESSOR's Lender. The LESSEE and its Insurer agrees to waive any rights of subrogation against the LESSOR and LESSOR's Lender.

(c) WORKERS COMPENSATION INSURANCE. Prior to the initial delivery of the Aircraft and at LESSEE's sole cost and expense, LESSEE shall have obtained and shall maintain in full force and effect a **Workers' Compensation and Employers Liability Policy** for statutory requirements of the state of hire or state of operation covering all employees and contractors working for or under the direction of LESSEE. The insurer will waive any rights of subrogation against LESSOR and LESSOR's Lender.

12.3 INSURANCE PROCEEDS

(a) AIRCRAFT REPAIRABLE. In the event of a loss, where such loss is reasonably determined NOT to constitute an actual or constructive total loss of the Aircraft, then the insurance proceeds shall be applied toward the restoration and repair of the aircraft in accordance with the provisions of *Section 13.0, Partial Loss of Aircraft*, which is set forth hereinafter.

(b) AIRCRAFT A TOTAL LOSS. In the event of a loss, where such loss is reasonably determined to constitute an actual or constructive total loss of the aircraft, then the insurance proceeds shall be paid in accordance with the provisions of *Section 14.0, Total Loss of Aircraft*, which is set forth hereinafter.

(c) WAIVER OF RIGHTS TO PROCEEDS. Except as specifically set forth hereinafter in paragraph 13.2(a), LESSEE hereby agrees to waive all rights to the payment of any proceeds from any hull insurance policy, including war risk coverage, confiscation, political risk, expropriation, nationalization, deprivation and hi-jacking. Further, LESSEE hereby agrees that the payment of such proceeds for any loss under any such insurance policy shall be paid by the insurer directly to LESSOR as sole "loss payee", and to such other "loss payees" as may be designated by LESSOR; payments to LESSOR are due no later than 10 days after receipt of the properly executed Proof of Loss. Claim funds should be sent express mail to the LESSOR's address. When presented with a Proof of Loss document, LESSEE agrees to execute that document within 24 hours and return it to the insurer.

12.4 SUBMISSION OF LEASE TO INSURANCE COMPANIES. LESSEE hereby agrees to immediately submit an executed copy of this *Aircraft Lease Agreement* to each insurance company that will be providing any insurance coverage that is required under the terms and conditions of this lease, such submission being for the purpose of obtaining from each such insurance company their specific approval and endorsement of the relevant provisions of this lease. The approval and endorsement of each such insurance company shall be evidenced by the timely issuance of a *Certificate of Insurance*, as is also otherwise required under this Section 12.0.

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

### 13. PARTIAL LOSS OF AIRCRAFT

13.1 Where the damage to the Aircraft has been determined to be repairable, then LESSEE shall promptly proceed to repair the damaged Aircraft so as to restore it to a condition equivalent to "approved airworthy condition", as this condition is defined and established by the *USFAA* and the manufacturer's specifications, which condition shall, in fact, be so equivalent. There shall be no abatement of the rent or any other charge or payment otherwise due hereunder during any period of conflict resolution, or while the Aircraft is being repaired.

13.2 Where the repair of the damaged Aircraft is undertaken by LESSEE, LESSEE understands and hereby agrees as follows:

(a) All repairs to the Aircraft shall be at LESSEE's own cost and expense. Any insurance proceeds paid to LESSOR as sole "loss payee", if any, which proceeds were in payment for such partial loss, shall be timely paid to LESSEE, or, where applicable, to third parties effecting such repairs, upon the timely submission to LESSOR of the repair invoices relating thereto. LESSOR must approve any third party proposing to make any repairs to the Aircraft in writing.

(b) LESSOR, at its sole option and discretion and at LESSEE's expense, reserves the right to send a service representative to the repair site to inspect the repairs to the Aircraft. All such repairs shall be completed to the satisfaction of the service representative. The cost to LESSEE of sending a service representative shall be the reasonable cost of transportation from LESSOR's facility to the repair site and return, plus the daily expense of an inspector.

### 14. TOTAL LOSS OF AIRCRAFT

14.1 Where the damage to the Aircraft has been determined to constitute an actual or constructive total loss of the Aircraft, then LESSEE shall pay in cash to LESSOR the amount of **$550,000.00 USD** from which sum shall be deducted any amount therefore received by LESSOR in payment for such total loss under any policy of insurance obtained in accordance with the provisions of this Aircraft Lease Agreement. Upon the payment of this sum to LESSOR, this Aircraft Lease Agreement shall terminate.

14.2 Property belonging to LESSEE or a third party which is carried in or attached to the Aircraft must be insured as an additional value. In the event of total loss of the Aircraft only LESSOR owned property and owned Aircraft will form the basis of the claim and salvage.

14.3 In the event of a total loss of the Aircraft, LESSEE and insurer hereby agree to fully cooperate with LESSOR in negotiating the purchase of the Aircraft salvage in its entirety, excepting any items that may be owned by LESSEE or any third party, at a mutually agreeable price. If circumstances warrant, LESSEE hereby further agrees to fully cooperate with LESSOR in the recovery of the Aircraft salvage. LESSOR shall retain all rights to the salvage if any.

### 15. INDEMNIFICATION

15.1 LESSEE shall indemnify LESSOR against, and shall hold LESSOR harmless from, any and all losses, damages, injuries, claims, demands, actions, suits and

## AIRCRAFT LEASE AGREEMENT
### MD500D Serial Number: 580315D

proceedings, including costs and expenses and reasonable attorney's fees, arising out of or in any manner connected with or resulting from the following:

(a) The possession, use, or operation of the Aircraft or any part or replacement part thereof, by whomsoever possessed, used or operated; or

(b) The maintenance and repair of the Aircraft, including the installation or removal of any Aircraft part/component pursuant to any provisions of this Lease; provided, however that LESSEE indemnification does not extend to any third party claim arising out of the Products Liability or negligence of LESSOR.

THIS INDEMNIFICATION AND AGREEMENT TO HOLD HARMLESS SHALL EXTEND TO AND SHALL INCLUDE LESSOR'S LENDER, THE AGENTS, SERVANTS, EMPLOYEES, OFFICERS, SHAREHOLDERS, SUCCESSORS, AND ASSIGNS OF LESSOR, AS WELL AS ALL OTHER COMPANIES THAT ARE ALSO OWNED BY LESSOR.

### 16. LIENS AND ENCUMBRANCES

16.1 LESSEE shall not permit any lien; claim, charge, or other encumbrance inconsistent with LESSOR's ownership of the Aircraft to accrue or to be placed against the Aircraft, other than those created by or against LESSOR. If a third

party threatens the imposition of any lien, claim, charge, or other encumbrance on the Aircraft, then LESSEE shall immediately notify LESSOR of this threat

16.2 No liens or encumbrances, including mortgages and any other type of hypothecation, that are placed or levied upon the Aircraft by virtue of any act by or against LESSOR shall impair LESSEE's right to the possession and quiet

enjoyment of the Aircraft in accordance with the terms and conditions of this Aircraft Lease Agreement.

### 17.0 SUBORDINATION OF LEASE

17.1 LESSEE acknowledges and hereby agrees that any interest in the Aircraft acquired by LESSEE by virtue of this lease shall be subordinate to any mortgage or lien or any other type of hypothecation given by LESSOR for security purposes, whether such mortgage or hypothecation now exists or is hereafter placed upon the Aircraft, including LESSOR's Lender Security Interest. The said subordination of LESSEE's interest in the Aircraft shall be effective upon the commencement date of this lease and shall remain in effect throughout its term, including any extensions thereof, without any further notice to LESSEE being hereafter required.

### 18.0 ASSIGNMENT AND SUBLEASE

18.1 The interest of the LESSEE under this lease agreement shall not be assigned, nor shall the Aircraft be subleased.

18.2 LESSOR has entered into this lease agreement with LESSEE based upon LESSOR's personal knowledge of the character, qualifications, and business attributes of LESSEE, and, by virtue of this, the granting or withholding of approval to assign or sublease the Aircraft to any third party shall be solely within the discretion of LESSOR.

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

18.3 The Aircraft shall at all times be kept in the possession of LESSEE and operated by its and or LESSOR'S personnel in accordance with all governing laws and appropriate governmental aviation agency regulations, as provided elsewhere herein.

## 19. RETURN OF AIRCRAFT

19.1 Upon the expiration or termination of this lease, LESSEE shall, at LESSEE's sole cost and expense, return the Aircraft and any and all spare parts and or equipment to LESSOR's facility in **Laredo, Texas**, or such other location as may be mutually agreed upon in writing between the parties hereto. This lease will be in

full force and effect including all payments until the aircraft has been returned per the above instructions. The Aircraft shall be surrendered to LESSOR in the same condition as delivered to LESSEE, including, but not limited to, fully operational avionics and instrumentation, normal wear and tear and "time life component", excepted, provided that the obligations imposed on LESSEE hereunder by **Section 7.0, Maintenance and Repair** have been performed.

19.2 Upon return of the aircraft a power check will be performed and the numbers will be compared with the acceptance affidavit of Schedule "B". If the turbine power is not within 2% (excepted degradation per year) of the power check stated in Schedule "B", it is the responsibility and cost of the LESSEE to restore the engine to within 2% of the original power check numbers.

19.3 The surrender of the Aircraft by LESSEE and its acceptance by LESSOR shall NOT serve as a release of LESSEE from any unpaid financial obligation that arose under the provisions of this lease, nor shall it serve as a release of LESSEE from the financial responsibility for any damage done to the Aircraft, which damage, upon the subsequent and timely examination of the Aircraft by LESSOR or its agents, is reasonably determined by LESSOR to be beyond the
normal wear and tear incurred by the use and operation of the Aircraft by LESSEE.

19.4 A fresh annual inspection on the Aircraft is required just prior to the return of the Aircraft.

## 20. HOLDING OVER

20.1 In the event that LESSEE shall retain, "hold over", the Aircraft for any reason whatsoever after the expiration or termination of this lease, including any extensions thereof, such retention or "holding over" by the LESSEE shall be subject to **ALL** the terms and conditions otherwise set forth in this lease.

20.2 Any retention or "holding over" of the Aircraft by LESSEE after the expiration of this lease, shall be at the sole option and discretion of LESSOR and shall be permitted ONLY with the express written approval of LESSOR - except where the retention or "holding over" is determined by LESSOR to be due only to an unavoidable and reasonable delay in the obligation of LESSEE to return the Aircraft and that such delay has been caused by circumstances beyond the control of LESSEE. However, where any such retention or "holding over" of the Aircraft by LESSEE is reasonably determined by LESSOR NOT to be due to an unavoidable delay AND where LESSOR has not given LESSEE its express written approval to retain or "hold over" the Aircraft, then and in that case the LESSEE is required to pay 150% of the monthly rent required by this lease until such time as the Aircraft has been delivered to the LESSOR at the location stated in **Section 19** of this Agreement.

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

### 21. BREACH AND WAIVER

21.1 No consent to any breach of any provision contained hereunder, whether express or implied, shall be deemed or interpreted to be a waiver of any succeeding or other breach, nor shall the acceptance of any partial payment(s) due hereunder be deemed or interpreted to be a waiver of LESSOR's right to the full amount then due and owing.

21.2 The failure of either party hereto to insist upon the strict and timely performance of any covenant or provision herein shall NOT constitute, nor shall such failure be construed to constitute, a waiver or relinquishment of either parties' right to thereafter insist upon such strict and timely performance.

### 22. DEFAULT BY LESSEE AND REMEDIES

22.1 Time is of the essence with regard to all provisions of this lease agreement. If LESSEE fails to pay any rent, Component Reserve Charge, or other amount

herein provided for within ten (10) calendar days from and after the date upon which the same is due and payable, then LESSEE shall be deemed to be in default. If LESSEE fails to observe, keep or perform any other provisions hereunder, which provisions are required to be observed, kept or performed by LESSEE, then LESSOR shall notify LESSEE in writing of such failure. If this

failure is not corrected within ten (10) calendar days from and after the day, upon which LESSEE receives such written notice, then LESSEE shall be deemed to be in default. In the case of any default hereunder, LESSOR shall have the right to exercise any one or more of the following remedies:

    (a) LESSOR may declare the entire amount of rent hereunder immediately due and payable without notice or demand to LESSEE; or

    (b) LESSOR may sue for and recover all rents and other payments then accrued or thereafter accruing; or

    (c) LESSOR may take possession of the Aircraft without demand or notice, wherever it may be located, without court order or other process of law. LESSEE hereby waives any and all damages occasioned by such taking of possession unless caused by LESSOR's gross negligence or willful misconduct, and such taking shall NOT constitute a termination of this lease unless LESSOR so notifies LESSEE in writing. LESSEE shall be obligated to pay and/or to reimburse LESSOR for all reasonable expenses incurred by LESSOR in taking possession, such expenses to include crating, packing, and all shipping cost back to LESSOR's facility; or

    (d) LESSOR may terminate this lease.

22.2. Notwithstanding any repossession, termination, or any other action, which LESSOR may take, LESSEE shall be and shall remain liable for the full performance of all of its obligations hereunder. Provided, however, that LESSOR shall release the Aircraft, and LESSEE shall be entitled to offset the amounts due to LESSOR by all amounts received by LESSOR under such release of the Aircraft.

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

22.3   LESSEE's failure to continuously maintain the insurance coverage required by Section 12.0 hereunder shall serve as grounds for an immediate default, and LESSOR – *without any notice whatsoever to LESSEE* - may immediately undertake any remedy set forth in this Section 22.0, which shall additionally include the purchase of insurance as herein required at LESSEE's expense.

22.4   All rights or remedies herein conferred upon or reserved to LESSOR may be exercised concurrently or separately, and each right or remedy shall be cumulative of every other right or remedy given hereunder, whether now or hereafter existing at law or in equity. However, in no event shall such rights or remedies be exercised in such a manner that LESSOR recovers more than the balance of the rent owed - plus any other amounts payable hereunder by LESSEE to LESSOR.

22.5   Disputes. The laws of the **State of Texas, USA**, shall govern the validity, construction, interpretation, and effect of this agreement, excluding any choice of the law of rule, which would otherwise require the application of any other jurisdiction. The prevailing party shall be entitled to recover reasonable attorney fees and cost.

## 23. BANKRUPTCY AND SPECIAL CONDITIONS

23.1 Neither this lease nor any interest hereunder shall be assignable or transferable by operation of law. In the event that any of the actions set forth hereinafter are taken or should otherwise occur, then LESSOR, at its option, shall have the right to immediately exercise any one or more of the remedies set forth herein in Section 22.0. In addition, LESSOR, at is option, shall have the right to immediately terminate this lease by giving written notice of such termination to LESSEE and this lease shall not thereafter be treated as an asset of LESSEE. The actions that shall allow LESSOR to exercise these stipulated rights are as follows:

    (a) If any proceeding under the Federal Bankruptcy Act, as amended, is commenced by LESSEE; or if any such proceeding is commenced against LESSEE by a third party and is not dismissed within thirty (30) days after the commencement thereof; or if LESSEE is adjudged insolvent; or, where applicable, if any such comparable proceeding is commenced by or against LESSEE or such judgment rendered under the laws of another country; or

    (b) If any interest of LESSEE hereunder is levied upon by legal process for the enforcement of any debt of the LESSEE, individually or jointly, which levy is not dismissed or a bond substituted therefore within thirty (30) days from and after the commencement thereof; or

    (c) If a receiver is appointed in any action or proceeding to which LESSEE is a party whereby the receiver has the authority to take possession or control of the Aircraft or any related items or equipment; or

    (d) If LESSEE makes any assignment for the benefit of its creditors of all or any portion of the assets of the LESSEE; or if LESSEE proposes or consents to a composition with unsecured creditors of the LESSEE.

23.2 Any time period otherwise allowed for the curing of any default hereunder shall not be applicable to the provisions of this Section 23.0.

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

### 24. EXPENSES OF ENFORCEMENT

24.1 In the event of a default or breach of any provision contained hereunder, the party committing the default or breach shall pay all costs and expenses, including

reasonable attorney's fees, incurred by the non-defaulting or non-breaching party in exercising any of its rights or remedies hereunder, or enforcing any of the terms, conditions, or provisions hereof.

24.2 In the event that any legal proceeding is commenced for the purpose of interpreting or enforcing any provision of this lease, the prevailing party in such proceeding, or any appeal there from, shall be entitled to recover all reasonable legal expenses incurred, including, but not limited to, court costs, discovery costs, and attorney's fees.

### 25. INTEREST AND PENALTIES

25.1 INTEREST. Any payment due hereunder that is not paid by LESSEE within **fifteen (15) calendar days** from and after the date upon which such payment is due shall accrue interest on the balance of such delinquent payment that is payable to LESSOR at the rate of ten percent (10%) per annum, or the highest lawful rate, whichever is less. The interest shall be deemed to have commenced on the due date and shall accrue until paid.

### 26. FORCE MAJEURE

26.1 If any party to this Agreement shall be prevented or delayed from performing any of the obligations or its part to be performed hereunder, or from exercising any of its right hereunder, by reason of acts of nature, strike or threat of strike, earthquake, fire, weather, existence of cultural resources, flood, helicopter crash, unscheduled maintenance, interruption or delay in transportation of communication, war, insurrection or mob violence, expropriation, nationalization, deprivation, hi-jacking, requirement or regulation of government authority, unavoidable casualties, shortage of labor or equipment or material, plant breakdown, or any other disabling cause which is beyond the control of the party and which cannot be overcome by the party through the exercise of normal means at a reasonable expense, then in such event any such failure to perform shall not be deemed a breach of this Agreement and the contract may be terminated without penalty. In the event of termination, LESSOR will be paid all money due to date and through the time that the aircraft is returned to LESSOR per the terms of this Agreement.

### 27. NOTICE

27.1 Any notice that is provided for or required herein shall be in writing and shall be deemed to be given and received: (a) when personally delivered by hand to the recipient, (b) when delivered by any notary public in accordance with any applicable United States Law (c) if by telefax ("Fax"), upon the successfully completed transmission of same to the recipient, where subsequent confirmation of receipt is established by return Fax or other verifiable means of acknowledgment, (d) if by FED-EX or other similar courier services, upon delivery to recipient, or (e) if by United States certified mail, return receipt requested, properly addressed to the recipient, notice shall be conclusively deemed received on the third business day from and after the date of posting United States mail.

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

27.2 All such notices shall be sent to the parties at their respective addresses or Fax numbers as set forth hereinafter, or to such other addresses or Fax numbers as either party may from time to time properly designate.

27.3 The parties hereto, for notice purposes and for all purposes, hereby agree that any reproduction of signatures on this Agreement or any subsequent modification, alteration, amendment, addition or deletion hereto by way of a telecopying device, such as a Fax machine, shall be treated as though these reproductions were executed originals, and each party hereby agrees to

undertake to provide the other party with a copy bearing original signatures within a reasonable time.

27.4 For the purposes of the notices referred here of the parties appoint as its domiciles:

LESSOR:  **Dragonfly Aviation, LLC**
Address:  4207 North Jarvis Avenue, Laredo, TX 78041
Phone:  956-722-2929
Email:  cathy@dragonflyaviation.com

LESSEE:  **Pacific Helicopter Tours, Inc.**
Address:  Kahului Heliport, Hangar 109, Kahului, HI 96732
Phone:  808-871-9771
Email:  alexfish@pacheli.com

## 28. WARRANTY DISCLAIMER

28.1 LESSOR WARRANTS THAT THE AIRCRAFT IN PRESENTLY AIRWORTHY PURSUANT TO THE REGULATIONS OF THE USFAA, AND THE AIRCRAFT IS EQUIPPED WITH ALL THE EQUIPMENT AND ACCESSORIES AS SET OUT IN SCHEDULE 'A' ATTACHED TO THIS LEASE.  LESSOR HEREBY WARRANTS THAT IT HAS GOOD TITLE TO THE AIRCRAFT QUIET ENJOYMENT OF SAME. BEYOND THESE SAID WARRANTIES LESSOR MAKES NO WARRANTIES OR REPRESENTATIONS OF ANY KIND OR NATURE, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE FITNESS OR DESIGN OF THE AIRCRAFT, ITS CONDITION, ITS WORKMANSHIP, ITS MERCHANTABILITY, ITS FITNESS FOR ANY PURPOSE, OR THE QUALITY OR CAPACITY OF THE MATERIALS IN OR ATTACHED TO THE AIRCRAFT. THE AIRCRAFT SUBJECT TO TRHS LEASE AGREEMENT IS BEING LEASED "AS IS, WHERE IS, WITH ALL FAULTS".

## 29. ACKNOWLEDGMENTS

29.1 LESSEE hereby acknowledges and confirms the following: (1) That LESSEE has entered into this lease on the basis of its own personal knowledge as to the value, condition, and the state of repair of the Aircraft; (2) That, except for the Warranty specified in Section 28.1 above, LESSEE has not relied upon any representations that may have been made by LESSOR or its agents as to the value, the condition, or the state of repair of the Aircraft.

## 30. APPLICABLE LAW

30.1 This Aircraft Lease Agreement and the rights of the parties hereto shall in every respect be governed by, and construed, interpreted and applied at LESSORS

# AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

OPTION in accordance with the substantive laws of the **State of Texas**, United States of America, without reference to the laws of any other state, country, or jurisdiction.

### 31. INTEGRATION AND MODIFICATIONS

31.1 INTEGRATION. This agreement contains the entire and only agreement between the parties, and supersedes all pre-existing between them respecting the subject matter. Any representation, promise, warranty, or condition in connection with such subject matter, which is not incorporated into this agreement, shall not be binding on either party.

31.2 MODIFICATIONS. No modifications, alterations, amendments, additions or deletions to this Agreement or to any of its provisions shall be binding upon the party against whom the enforcement of such modifications, alterations, amendments, additions or deletions is sought - unless such modifications, alterations, amendments, additions or deletions have been made in writing and signed by such party, or for and on behalf of such party by one being fully authorized to so sign.

### 32. WARRANTS OF AUTHORITY

32.1 LESSOR. Each person signing this lease for and on behalf of LESSOR hereby represents and warrants that he is fully, properly, and duly authorized and empowered to so act, and that this lease is the lawful, authorized, and voluntary act of LESSOR.

32.2 LESSEE. Each person signing this lease for and on behalf of LESSEE hereby represents and warrants that he is fully, properly, and duly authorized and empowered to so act, and that this lease is the lawful, authorized, and voluntary act of LESSEE.

### 33. SECTION AND PARAGRAPH HEADINGS

33.1 The section and paragraph headings used throughout this Aircraft Lease Agreement have been used for the convenience of the parties only, such headings do not form a part of this Agreement, nor are they intended to change, simplify or diminish the meaning of any of the terms of this Agreement.

### 34. COUNTERPARTS

34.1 This Aircraft Lease Agreement may be executed separately by each party, in two or more counterparts. These said counterparts, all of which together, shall constitute one and the same instrument and shall be deemed to be a full and complete contract between the parties hereto. While there may be duplicate originals of this Aircraft Lease Agreement, including counterparts, only one need be produced as evidence of the terms hereof.

### 35. ADDITIONAL PROVISIONS

35.1 Attachments to this lease are as follows:

| | |
|---|---|
| Schedule "A" | Description of Aircraft and Equipment |
| Schedule "B" | Affidavit of Delivery and Acceptance |

## AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D

Schedule "C"          Component Reserve Charge - List of Covered
                      Components

**IN WITNESS WHEREOF**, the parties hereto have executed this *Aircraft Lease Agreement* on the respective dates as set forth below.

**LESSOR:**                              **LESSEE:**

Date:  6-28-2017                         Date:  6/21/17

By:                                      By:

# AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D
### SCHEDULE "A"

### Description of Aircraft and Equipment

**This schedule** is attached to and becomes a part of the Aircraft Lease Agreement between **Dragonfly Aviation, LLC.** ("Lessor"), and **Pacific Helicopter Tours, Inc.** ("Lessee"), which Agreement was dated _____ 6/21 _____, **2017.**

### Aircraft Description

- ☑ Year, Make, Model: 1978 McDonnell-Douglas MD500D
- ☑ FAA Registration:        N36KR
- ☑ Engine Model/SN:  Rolls-Royce 250-C20B S/N: CAE-830769
- ☑ Aircraft Serial Number:      580315D

### Aircraft Equipment

- ☑ High Skid Gear
- ☑ Bleed Air Heater
- ☑ Long Line Kit
- ☑ Blade Tie Down Kit
- ☑ Concord Battery Kit
- ☑ ~~Belly Fuel Tank~~  CARGO  POD
- ☑ Dart Bear Paws
- ☑ Cargo Hook
- ☑ Cargo Mirror
- ☑ Oil Filter Kit
- ☑ Fuel Filter Kit
- ☑ AFS Particle Separator

### Avionics

- ☑ King KY196A VHF Com  —  REPLACE.
- ☑ King KT76A Transponder
- ☑ NAT AMS 42 Audio Controller
- ☑ NAT NPX136D FM Transceiver
- ☑ Encoder
- ☑ ELT
- ☑ Satellite Tracking/Com
- ☑ Garmin GPS

Together with all attachments, accessories, appurtenances, additions, accessions and substitutions thereto or therefore and all proceeds thereof.

**IN WITNESS WHEREOF**, the parties hereby affirm the foregoing description of the aircraft and equipment subject to said Aircraft Lease Agreement, the date of this affirmation being concurrent with the execution date of the said Lease Agreement.

**LESSOR:**                                          **LESSEE:**

Date: _6-28 -2017_                    Date: _6/21/7_

By: _____                    By: _____

# AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D
### SCHEDULE "B"

### AFFIDAVIT OF DELIVERY AND ACCEPTANCE

**THIS SCHEDULE** is attached to and becomes a part of the Aircraft Lease Agreement between **Dragonfly Aviation, LLC.** ("Lessor") and **Pacific Helicopter Tours, Inc.** ("Lessee"), which Agreement was dated _____ 6/21 _____, **2017**.

DELIVERY by LESSOR to LESSEE of the Aircraft subject to the aforementioned Aircraft Lease Agreement, which Aircraft is specifically described in Schedule "A" of this said Aircraft Lease Agreement, is hereby acknowledged and accepted on behalf of Lessee by the undersigned authorized agent of LESSEE.

**LESSOR** acknowledges that **LESSEE** is an expert in helicopter aviation and Maintenance and is proficient in aircraft inspection and evaluation. **LESSOR** is relying on this expertise. Upon acceptance and delivery of the aircraft, the **LESSEE** has acknowledged the aircraft is adequate for its intended use and assumes full responsibility of said aircraft for the terms of this lease. Date of acceptance is the lease Commencement date.

Lease Start Date: _HANGER_ 2017  Date of Aircraft acceptance by Lessee
(handwritten: 1 MONTH AFTER HELICOPTER REACHES PACHELI)

Lease Termination Date:                **Twelve (12)** consecutive months after
acceptance.

Hobbs Time at Acceptance: ___61.9___

### AT DELIVERY

### AIRCRAFT DESCRIPTION

| | |
|---|---|
| Year: | 1978 |
| Model: | MD500D |
| Serial No.: | 580315D |
| Registration No.: | N36KR |

### LOCATION AND DATE

Location of Aircraft at Delivery:      **Laredo, Texas USA**

Date of Acceptance:                      Same as lease start

**IN WITNESS WHEREOF**, the undersigned agent for LESSEE hereby accepts delivery of the Aircraft as above described on behalf of LESSEE, the date of this delivery and acceptance being the date as set forth herein above.

**LESSOR:**                            **LESSEE:**

Date: _6-28-2017_                     Date: _6/21/17_

By: _____                  By: _____

# AIRCRAFT LEASE AGREEMENT
## MD500D Serial Number: 580315D
### SCHEDULE "C"

### COMPONENT RESERVE CHARGE - List of Covered Components

**THIS SCHEDULE** is attached to and becomes a part of the Aircraft Lease Agreement between **Dragonfly Aviation, LLC.** ("Lessor") and **Pacific Helicopter Tours, Inc.** ("Lessee"), which Agreement was dated_____ 6 / 21 _____, **2017**.

The component reserve charge will pay for only "Time Life" and TLL (time limit life) components on the maintenance status sheet to be updated and run on the above date and incorporated and attached to the lease under this Schedule C.

| | | |
|---|---|---|
| 1. | Main Rotor Blades | S/N – 663C; 853B; 854B; 493A; 855B |
| 2. | Main Rotor Hub Assembly | S/N – 369D22014 |
| 3. | Main Rotor Driveshaft | S/N – 369F5510-1 |
| 4. | Main Rotor Swashplate | S/N – 369D27609-501 |
| 5. | Main Rotor Transmission | S/N – 369D25100-507 |
| 6. | Overrunning Clutch | S/N – 369D25351 |
| 7. | Engine Compressor | S/N – CAC-36918 |
| 8. | Engine Turbine | S/N – CAT-37497 |
| 9. | Engine Fuel Control | S/N – 23070606 |
| 10. | Engine Governor | S/N – 22591 |
| 11. | Engine Fuel Pump | S/N – SERT110795 |
| 12. | Tailboom Assembly | S/N – 369D23500-505 |
| 13. | Tail Rotor Driveshaft | S/N – 369D25518-501 |
| 14. | Vertical Stabilizer Assembly | S/N – 369D23600-503 |
| 15. | Horizontal Stabilizer Assembly | S/N – 369D23601-511 |
| 16. | Tail Rotor Transmission | S/N – 369D25400 |
| 17. | Tail Rotor Blades | S/N – D135; 7673 |

ADMENDMENT TO LEASE.

#  1  MONTH GRACE PERIOD FOR ALTERATIONS. # KR
      from beginning of lease
1. EXHAUST CLAMP KR

2. CARGO HOOK CABLE. KR

3 KY196 RADIO. KR

4. RADAR ALTIMETER / MAINT POSS. AT TERMINATION. KR

5. SEATS REAR MESH KR

6. FLOOR REAR. KR

7.

8.

9.

10.

6/29/2017

MARS CANTO

Kevin Reed

Richard Potts
w. tressed

Page 22